Good afternoon, Your Honors. My name is Raphael Goldman. I represent Appellant Cheyenne Motamedi and I'll be presenting on behalf of all three appellants in this consolidated matter. I'd like to reserve three minutes for rebuttal if I could. My co-counsel on the briefs are here with us in the virtual courtroom watching today. Your Honors, the Constitution assigns the federal legislative power to the United States Congress and the Supreme Court has made clear that accompanying that constitutional assignment is a prohibition on Congress delegating to other branches its distinctively legislative powers. And the Supreme Court has long recognized that one of Congress's distinctly legislative powers is the power to define crimes. And that brings us to the statute at issue in the case of Bench. The statute under which appellants were convicted runs afoul of the non-delegation rule. 42 U.S.C. Section 1320a-7b, in addition to being a mouthful, also assigns virtually unfettered discretion to an executive agency to determine what conduct will be criminalized and what's not. The statute begins by prohibiting a broad range of activities involving the receipt or payment of remunerations in exchange for arranging or recommending services paid by a federal health care program. And then it authorizes HHS to accept any payment practices it wants from this general prohibition. Can I just pause you just to make, just to pause one second. So under the B-2, the sort of the main prohibition, just standing alone, do you have any, do you have any objection to that, any constitutional challenge to that provision? Not, if I understand the court's question correctly, I don't think we challenge it standing alone. The challenge is to the delegation to HHS to determine what exemptions to apply. And it becomes a scheme. Congress clearly in 1987 amended the statute in order to reduce the scope of the criminal liability. It recognized that there were, that there was confusion about what was criminal and what was not. And it decided that the criminal law needed to be further scope, sculpted. And instead of doing it itself, as is its job, it passed the buck to HHS and it said, you decide. And so now HHS decides within this universe of conduct, what's criminal and what's not criminal. Just to pause again. So is your argument that any delegation to HHS was impermissible or that this one was because it was just, it was just too open-ended? The second, your honors, I think there are certainly, you can delegate under, we're sort of at a crux here where maybe the non-delegation jurisprudence is going to change. But I think under either, under either test, under the old test or the potentially coming new test, of course, there are going to be some delegations. Okay. But so you don't, you don't have an objection to, to, as you don't have a constitutional objection to HHS issuing guidance on what does not fall within this statute. Your objection is that they were basically just given no standards by which to make that determination. That's correct. And they, they were given insufficient guidance. And also. Can I clarify? Are you the, you're not objecting to A through H, right? Of those exceptions. It's just the I. Correct. Okay. And going, going back to Judge Bress's question, you know, I think it's not quite accurate simply to define HHS's role as providing guidance. They are providing a statutory exception to criminal liability. When they create one of these exemptions, if your conduct falls into that exemption, your conduct is not criminal. So it's not just guidance. It is deciding what's criminal and what's not. Now, there's another relevant statute and that's 1320A-7D. And it does purport to provide some quote unquote guidance to HHS. But in our view, it doesn't really provide any guidance because it raises some factors that HHS could consider. And then at the end it says, HHS can also consider any other factors the secretary deems appropriate in the interest of preventing fraud and abuse in the federal healthcare program. So it says to HHS. Okay. Assuming I agree with you on the non-delegation issue, how can this court give you redress? By declaring the statute unconstitutional and reversing the conviction. Yeah. But which statute? Just the exceptions, the safe harbor statute? No. I think you have to strike down all of the whole criminal provision as drafted. Now why do we have to do that? Because it works together as a whole. The criminal statute starts by creating a universe of criminal conduct. And then Congress decided in 1987, it's very clear from the legislative history, we understand that our broad prohibition is confusing and too broad. We want to reduce it. So it's clear that there's a congressional intent to reduce the scope and clarify the scope. But instead of doing that, it said to HHS, you do it. So the provisions work together. And in the end, they create a complete scope of criminal liability. Congress obviously wanted to move away from the 1977 broad scope of criminal liability. But you're only objecting to the big I. So why couldn't we leave all the other factors intact and just strike down big I? You mean, strike down the exception that says any other factor you might... Correct. Which is the clearest non-delegation violation. And then leave everything else intact. And then that wouldn't redress your clients. Well, I think it would because the exemptions, the universe under which my client's conduct was done, was a universe under which HHS made the exceptions, including the fact that HHS was doing big I. We don't know which factor it was considering when it decided the whole scope of the criminal law. But regardless, your client wasn't engaged in any conduct that's within the safe harbor. That's correct, Your Honor. Our client was... Why wouldn't the conviction stand? Because it wasn't... The way the statute works is HHS is deciding which is criminal and which is not criminal. And so it's HHS making that decision. That's the constitutional requirement. Is there any world in which HHS would make what your clients did non-criminal? I certainly think there could be a world, yes. I mean, the alleged conduct here is paying remunerations. There's no allegation of fraud. It's simply paying remunerations. You know, they operated a small clinical laboratory. They paid remunerations to doctors and clinics to send referrals their way to do testing. That's not the type of conduct that I think we would think of as malum and say that anyone would think of as criminal. That's a fairly normal... But doesn't it give the doctors incentive to take more tests? Because whether or not the tests are necessary, they still get remuneration from your clients? I think that is an arguable theory under which these distinctions were made, but there's lots of other ways someone could have done it. Congress could have decided, we'll punish you if it's clear that you were doing this for a non-medical purpose or for some fraudulent purpose. We don't know how Congress would have done it if Congress had done it, but they didn't. Instead, they left it to HHS, and HHS did it this way. And they didn't do it either. I'm sorry, your honor? And HHS didn't do it either. No, they didn't, and that's the complaint. They were making the decision. We don't know what Congress would have decided. They could have done it under I. Is that your argument? Sorry, who could have done it under I? HHS could have created a safe harbor for your client's conduct under I, the guy. They could, yes, they could have. They could create any safe harbor they want under I. Right, but then the whole point is you're saying that that's on a constitutional non-delegation, on a constitutional delegation, and so therefore if we strike that down, they can't create that safe harbor for your client. So I just, that's why I just don't see how we could give you any redress. We're not asking the court to decide what exemptions HHS should or shouldn't do. We're saying that the delegation to HHS is the problem. Congress should be deciding this question. And since it didn't, that's the constitutional problem. It renders the convictions unconstitutional. Basically, you're saying the whole, these two statutes work so closely in tandem that they're inseparable, and so therefore if there's one little piece, the whole thing has to go. Well, it's all one statute. It's the 7B statute that contains the, sorry, and you're referring to 7D. Yes, they work closely together. Correct. Now, so, in short, we believe the statute allows an executive agency to establish the contours of the criminal law based on whatever factors it finds relevant and important. And as I alluded to earlier, this case comes before the court at a sort of idiosyncratic juncture. We seem to be on the crux of a major change in the direction of the non-delegation jurisprudence. Five sitting Supreme Court justices have directly expressed an interest in reexamining the court's non-delegation jurisprudence. And as we noted in our recent Rule 28J letter, the Supreme Court recently granted certiorari in the West Virginia versus EPA and its companion cases, which may provide a vehicle for the court to do that very reexamination of the non-delegation doctrine. Our contention is that the statute of conviction fails even under the old traditional test, and it will also fail under a new test to be fashioned by the Supreme Court, potentially in the very near future. So the traditional test posits that while Congress is barred from delegating its legislative powers, it can nevertheless obtain the assistance of its coordinate branches. And under that test, the constitutional question is whether Congress has supplied in the statute a quote-unquote intelligible principle to guide the delegee's use of discretion. And the statute here fails to do that. There is no intelligible principle. The principle is anything you want. That's not appropriate. And so Congress went beyond asking HHS to implement and enforce the laws and instead was asking the agency to write the criminal law. In any event, we expect that the Supreme Court will soon adopt a new non-delegation test. Of course, we can't predict its precise contours, but we can predict that whatever the outer boundaries of the test, it will certainly require reversal of appellant's convictions. As discussed in our briefing, Justice Gorsuch is a leading proponent of a new, more robust non-delegation principle. The central focus of his proposed test looks at who's making the policy judgments, Congress or an executive agency. And we think the criminal statute at issue here clearly runs afoul of that test. Congress announced a conclusory principle that people should be punished for participating in fraud and abuse, created a broad and concedingly confusing prohibition on remunerative activities, and then when it decided it wanted to clarify and reduce the scope of criminal activity, it told HHS, you resolve the confusion and vested it with almost unchecked discretion. In our view, that's unconstitutional, and appellant's convictions should be struck down. Unless there's other questions, I'd like to save the balance of my time, please, Your Honors. Thank you, counsel. Okay, Mr. Dawson. Good afternoon, Your Honors, and may it please the Court. Andrew Dawson for the United States. The defendants and appellants in this case face two insurmountable hurdles that preclude relief, as they have requested. First, the defendants do not have standing to challenge the statute that they have challenged. The regulatory safe harbor provision has not harmed them, there is no injury in fact, and the request of the challenge they lodge is not redressable. I don't understand that. I mean, this is the statute of conviction. They're challenging it. It may be a bad challenge, but they would seem to have standing. Your Honor, I think in fact it is not the statute of conviction. The statute is the section that was being discussed earlier, that is 7B, not 7D, subsection B1 and 2. That's the statute of conviction that actually criminalizes this conduct. The fact that there is a separate and related provision that allows HHS to promulgate regulations that provide safe harbors, that is a separate statute. And I think in defendants' argument, there's a bit of a tell where the description was not that the statute is being challenged, but that the scheme is being challenged. And that is, I think, significant because schemes do not cause injury in fact. Statutes cause injury in fact. Yes, but these things all are working together, right? Their argument is that if there was a more precise and appropriate delegation to the agency, the agency then could have exempted their conduct. And so that, I think they have standing to make the argument, and then it brings us to the actual text of the safe harbor, and you have various arguments as to why there are many intelligible principles laid out there. Your Honor, I think there are some points there that defendants gave short shrift to, which I do think are relevant to the standing inquiry. One is that the unstated assumption that these are basically two sides of the same coin. There's the criminal prohibition, and then there are the regulation of safe harbors, and that one could not exist without the other. That is inconsistent with the statutory text. Congress's command does not obligate HHS to issue any regulations. Congress's statute contemplates a world in which no such regulation would ever be actually promulgated, but the criminal prohibition would continue to exist. What Congress commanded is that HHS call for proposals, consider those proposals, but only that a regulatory safe harbor be issued if appropriate. That isn't a command to actually do anything with these regulations or to create a safe harbor, and so these— Well, but that does create an injury for the defendants here. I mean, that HHS didn't exercise that discretion in a way that was favorable to them. So that does seem to be an injury. The question I have is whether or not we could fix it. Is there a redressability of standing? Unless we say that this one provision is inseparable and requires striking down the whole scheme, as you said, then I don't see how we can give any redress. And, you know, I take their argument to be somewhat different, not that the agency should have exercised their discretion to aid these defendants, but rather that they should not and cannot have that discretion. The challenge is more of a threshold issue where the argument is this is legislative, this is not an executive role. And on that point, I think they are incorrect on—I'll get to the substance of these arguments later, but I don't think that the challenge is so much the exercise of the discretion but the existence of the discretion. And that's where— Is there any case where we've said that somebody can't challenge the statute under which they were convicted? I mean, again, the challenge may not be a meritorious one, but the question—you're saying they can't even raise it, and I'm not sure that's correct. And you're correct, Your Honor. I fully agree that they have the right to challenge the statute of conviction, and my argument is that this is not the statute of conviction. The fact that there is an adjacent regulatory safe harbor provision, that's not the statute they were convicted under. That would provide relief to other defendants, but it has not harmed them, and it's distinct from the actual criminal prohibition. I think a useful comparison— But I don't see how they—just to—I mean, the two statutes have different effective dates. They weren't even enacted together. So I don't follow that argument at all that they're the same statute. And I agree, Your Honor. The 1977 enactment, which created, I think, the current language of the criminal prohibition, existed for approximately a decade before Congress created a kind of predecessor regimen of these regulatory safe harbors. And from our perspective, the two critical practical points are, A, the statutes were enacted separately. The criminal prohibition existed on its own, and there's no reason to think that they rise and fall together. And B, Congress didn't dictate that these regulatory safe harbors actually be promulgated. The statute contemplates in a world in which they never would have been promulgated, and thus the criminal prohibition would continue independent of those other regulations. So they are severable, and because they're severable, a challenge to the regulatory safe harbor provision doesn't impact the criminal prohibition. So a question. Maybe that's not a standing question. Maybe it's just a lack of relief question. It is odd to cabinet it as a standing question since it is a challenge to the conviction, but I do take the point that there's no redress. So maybe it's just a figuring out how to cabinet that. And I agree. I think that's, in a sense, I think the appellants are in a bit of a bind because there are many references in the opening brief to the vagueness doctrine and the fact that there are doctrinal relationships between the non-delegation doctrine and the vagueness doctrine, but they can't mount a direct vagueness challenge on the criminal prohibition because this court's case law precludes that. Anne Lester has already settled that case, and so they're forced to take these sort of oblique routes to suggest there's a problem with vagueness when, in fact, the vagueness issue is settled and we're left with a non-delegation issue. And I'd like to move to the substance because I do think there are a number of critical points that appellants have given short shrift to. First is the assumption that the factor I, which is listed under Section 7D, is kind of ipso facto, not an intelligible principle, and that is completely inconsistent with this court's and with the Supreme Court's case law. I won't belabor the point. Our brief has numerous examples of delegations by Congress to executive agencies that were far more nebulous, far more amorphous than this that were still sufficient. Just to give a couple of examples, I think the most critical one is the Toobie case, which this case concerns safe harbors from criminal prosecution. Toobie concerned vesting the executive with the authority to schedule new drugs and create new criminal liabilities where they did not exist before. And in Toobie, the emergency provisions weren't even a notice-and-comment provision, and the court found that one, quote, cannot plausibly argue that the standard, quote, imminent hazard to the public's safety fails to satisfy the constitutional test. There are various others in other contexts that are even more broad. There are, I think, the best one in Whitman v. American Trucking, a 2001 Supreme Court case. The principle of to protect the public health was found to be sufficient. And I think we should look as well to the specific sector here in the interest of preventing fraud and abuse. All of defendants' firepower is trained on that and the presumption that this is not an intelligible principle, that this doesn't provide general policy guidance. Fraud and abuse is not an unknown or unfamiliar doctrine to the executive. Juries across the country every day assess whether a defendant acted with intent to defraud. Intent to defraud is sufficiently tangible, sufficiently intelligible to guide jury's discretions. We have wire fraud statutes, bank fraud statutes. There is nothing unintelligible or vague. It is not the case, as appellants suggested, that HHS can authorize any payment practice it wants. The interest of trying to prevent fraud and abuse in federal health care programs is a very reasonable, sufficiently specific goal that the legislator is entitled to draft the assistance of the executive in trying to vindicate. I think the other anomaly in this case is that, as I noted with the Toobie case, where the Supreme Court authorized the executive to broaden criminal prohibition, the only thing happening here is a narrowing of criminal penalties. The executive has preexisting constitutional authority not to bring cases for a The end result of this regulatory structure is the same. Certain cases that could otherwise have been brought are not brought. In our view, this is formalizing and creating a practical structure to aid the marketplace that ultimately, at the end of the day, ends in the same place. These regulatory structures give guidance. Marketplace actors know what the precise contours are, and they're willing to invest money in certain innovative health care plans that maybe otherwise they would not be. The appellant's response to this is to say that there is a categorical difference between traditional prosecutorial discretion and this case because this case involves making otherwise criminal acts legal. First, I think that's a formalist distinction. I don't know of any case that imbues that distinction with any import. And second, I don't think it's true. If you imagine a health care provider seeking some innovative structure, the criminal prohibition here requires that a defendant actually act with willfulness. So a defendant would have to act with willfulness towards the law in order to be guilty. A good-faith actor would not be acting with willfulness. A good-faith innovator in the market who may be concerned that his actions could be construed as remunerations would still not be within the scope of the statute because he or she would not be acting with willfulness. Now, practically speaking, no responsible market actor wants to walk too close to the line. So what this structure does is it gives notice and comment. It gives fact-finding abilities to HHS. HHS consults with the Justice Department, the Attorney General, and then regulations on specific subject matters are issued that give that kind of clear guidance that authorizes certain activities that perhaps would have been chilled otherwise. But it isn't the case that an act that otherwise would have been unlawful has become lawful. A good-faith act is not unlawful under the statute because it requires willfulness. I think the most important case, the best comparison to this, and I think this case is actually a stronger case, would be the Melgar-Diaz decision from just this past summer, June of 2021. I think one important distinction is that in that case, the statute, which was 1325, the illegal reentry statute that creates a misdemeanor for entering the country not at an authorized point of entry, the statute itself needs the executive to fill in the gaps. I believe the court's description was that there are interstitial gaps that the executive has to fill. The statute itself, until those points of entry are defined, the statute doesn't have operation as a criminal law. You can't violate it until the executive takes action. This case, as we've already discussed, is different. The criminal prohibition is preexisting, it's freestanding, and it continues to operate. Whether a regulation is issued or not, the criminal prohibition remains the same. And so on a standing analysis, and I think on the underlying concerns of the non-delegation doctrine, which concern investing the executive with broadened authority. There's nothing broadened in this authority. The executive isn't determining what will trigger the criminal prohibition, but rather what will dial it back, what will be an exemption, which I think is critically different. And even if this court doesn't agree that, as is argued in our brief, that this is not even a legislative delegation, it's still relevant, again, as Mel-Gar-Diaz described, one of the factors in assessing a non-delegation challenge is whether or not the power granted falls within the traditional scope of the agency's actions. So in Mel-Gar-Diaz, the question was immigration. Immigration is a traditional prerogative of the executive, and so there was less concern about a delegation that affects the power over immigration. Similarly here, a delegation not to prosecute. Not prosecuting is a decision made by the executive branch every day. Whether or not to go to the outer bounds of a statute or to prosecute only the most egregious actions within it, that happens every day and is at the core of the Constitution's commands to the executive branch. So a modification of the mechanism by which this happens doesn't offend the non-delegation doctrine. It is simply a new way of actually affecting the same discretion that has already been afforded to the executive. So, Your Honors, I would urge a review of the other intelligible principles that the Supreme Court and this Court have authorized demonstrates that the factors in this case, not just the fraud and abuse factor, but the others surrounding it to provide context. There is sufficient guidance to inform HHS as to the general policy. There is an intelligible principle, and so there is no non-delegation concern. And I would also urge this Court to decline to guess as to what a future rule may be, what a future Supreme Court may decide for the non-delegation doctrine. Appellants have raised a number of cert petitions that are currently pending, and I reviewed those this morning. None of them actually discuss the non-delegation's intelligible principle doctrine. They turn on specific statutory questions relating to the EPA and the major questions doctrine. I can't say it's impossible the Supreme Court will say something of relevance here, but I can say the petitioners are not challenging the intelligible principle test. They turn on very specific idiosyncratic issues present in the Environmental Protection Act that are not relevant here. So there's no reason, I think, to defer ruling on this, because at some point in the future perhaps a new rule will apply. So, Your Honors, unless there are further questions, I'll ask first that this Court dismiss for lack of jurisdiction, for lack of standing, either on lack of injury or lack of addressability, or in the alternative, that the Court simply affirm because the Congressional command contains an intelligible principle which relates to the Executive's pre-existing constitutional authority to prosecute or not prosecute cases in its discretion. Thank you very much. Thank you, Counsel. Mr. Goldman? Thank you, Your Honor. So a number of points that I'll try to do quickly. So first, just to be clear, we're not challenging only the 7D statute. The statute of conviction, 7B, subsection B3E, gives the power to HHS to make exemptions to the criminal law. And that's the crux of the issue, and that's the challenge. Your client wasn't convicted of 7B. They were, Your Honor, B2. Is that what the indictment says? It said – sorry, they weren't convicted of – they were convicted of B but not D. And D is what you're saying violates non-delegation. Well, B3E says anything that the agency decides is an exemption is an exemption to the criminal law. So it's incorporated into the criminal statute that was – sorry, 7B, subsection B3E incorporates that rulemaking. To move on quickly about the severability issue, you know, we've been – the court has been talking about potential partial invalidation here. That's only permissible, as we said in our briefs, if the court is convinced that Congress would have passed the statute even without the portion that the court strikes down. We think that's not correct. The 1987 amendment makes clear that Congress wanted there to be a change in the criminal law, wanted there to be a sculpting and a reduction of the scope of the criminal statute. And so I don't think the court can reach the conclusion that Congress would have wanted this statute to work how it works without the exemption. Counsel, excuse me. Even if we were to strike down all of 7B, it still doesn't affect 7B. It doesn't affect – And your client was convicted under 7B. My client was convicted under 7B, subsection B, and that's the one we think ought to be stricken. Subsection B3E is a incorporation of the agency's rulemaking into the – as exceptions to the criminal law. Very quickly, there was some discussion of whether fraud and abuse creates an intelligible principle. We've argued not, and that's because the original 1977 version of the statute, the whole point of it supposedly was to prevent fraud and abuse. But as discussed, subsections B1 and B2 of the statute prohibit a vast swath of conduct, including any remunerative activities, not all of which are obviously abusive or fraudulent. The statute never defines fraud or abuse, but it says to HHS, you go prevent fraud and abuse, and it doesn't tell the agency how to decide which remunerative practices constitute abuse and which constitute fraud. And so in our view, that's a violation of the non-delegation principle. I see I've reached my red light, so we would ask the court to reverse. Can I just ask you a question? So you referred to 3BE, which incorporates the safe harbor provision. Is that Section 14A of the Medicare and Medicaid Patient and Protection Act of 1987? Or how are you saying it incorporates? Yes, that is what became codified as 7D. Got it, okay. If there's other questions, I'd be happy to answer them. Otherwise, we'd ask the court to reverse the appellant's convictions. Thank you, counsel. U.S. v. Novamedi is submitted. And colleagues, I'd like to take five minutes. I left some papers in another room that pertain to the last case. That's fine. Thank you.
judges: WARDLAW, BRESS, BUMATAY